## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

_____

SHARI FIORE,                                                CASE NO.: _____

        Plaintiff,

        v.                                           **PLAINTIFF DEMANDS A**
                                                            **TRIAL BY JURY**

HEALTHTRUST WORKFORCE
SOLUTIONS, LLC,

        Defendant.
_____

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, SHARI FIORE ("Plaintiff" and/or "Ms. FIORE") in the above styled cause hereby sues Defendant HEALTHTRUST WORKFORCE SOLUTIONS, LLC ("Defendant" and/or "HealthTrust"), and hereby files and serves her Complaint and Demand For Jury Trial and alleges as follows:

### NATURE OF CASE

1.    This employment discrimination case is about an employer who subjected its older and disabled employee to harassment, discrimination, and retaliation at the cost of her physical health, before ultimately culminating in the unlawful termination of the employee.

2.    Plaintiff FIORE brings this action pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("**ADA**"), the Age Discrimination in Employment Act 29 U.S.C. §621 et seq. ("ADEA"), and the Family Medical Leave Act, 29 U.S.C. § § 2601–2654 ("FMLA").

3.    Ms. FIORE seeks monetary relief to redress Defendant's unlawful employment practices in violation of the ADA, the ADEA, and the FMLA. Additionally, this action seeks to redress Defendant's deprivation of Ms. FIORE's personal dignity and her civil right to pursue equal employment opportunities.

4.    Throughout the course of her employment, Ms. FIORE found herself at the center of a hostile work environment as part of a scheme orchestrated by Defendant to unlawfully eliminate Plaintiff from her position.

5.    Defendant's unrelenting discrimination against Plaintiff culminated with her unlawful termination.

6.    At bottom, Defendant is liable for subjecting Ms. FIORE to a work environment infested with relentless discrimination and for wrongfully terminating because of her age and disability, for interfering with her request for family medical leave, and for retaliating against Plaintiff for her complaints of discrimination and requests for family medical leave.

## JURISDICTION AND VENUE

7.    This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to ADA, the ADEA, and the FMLA.

8.    This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under ADA, ADEA, and FMLA.

9.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendant was located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Broward County. Additionally, the events took place in Broward County, Florida.

## PROCEDURAL PREREQUISITES

10.   Plaintiff has complied with all statutory prerequisites to file this action.

11.     On or about October 2, 2018, Plaintiff dual-filed charges with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission ("EEOC") against Defendant as set forth herein, Charge No. 210-2018-05824.

12.     An EEOC filing automatically operates as a FCHR filing.

13.     On or about January 26, 2021, the EEOC issued its determination finding reasonable cause that violations of the ADEA and ADA occurred.

14.     Despite Plaintiff's attempts to conciliate through the EEOC, on or about May 10, 2021, the EEOC issued Plaintiff a Notice of the Right to sue, and this action is being commenced.

15.     This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

## PARTIES

16.     At all material times, Plaintiff FIORE is an individual female over the age of forty (YOB: 1960) with qualifying disabilities (cancer, depression, post-traumatic stress disorder) who is a resident of the State of Florida and resides in Palm Beach County.

17.     At all material times, Defendant HealthTrust is a Foreign Limited Liability Company duly existing by the virtue and laws of the State of Florida with offices in Broward County, Florida.

18.     Defendant HealthTrust is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

19.     At all material times, Defendant HealthTrust employed JOI CROCKETT (hereinafter referred to as "CROCKETT") as a Travel Division Director.

20.    As of October 21, 2016, CROCKETT held supervisory authority over Plaintiff, controlling various tangible aspects of her employment, including but not limited to the power to hire and fire Ms. FIORE.

21.    At all material times, Defendant HealthTrust employed SHERI ALBERT (hereinafter "ALBERT") as Director of Human Resources.

## FACTUAL ALLEGATIONS COMMON TO ALL COMPLAINTS

22.    Plaintiff is a disabled individual female over the age of 40 who suffers from cancer of the thyroid, depression, and Post-Traumatic Stress Disorder.

23.    Thyroid cancer is a disease in which cancer cells form in the tissues of the thyroid and treatment often entails surgery, radioactive iodine, and radiation, among other therapies.

24.    Depression is a mental health disorder characterized by persistent depressive mood or loss of interest in activities that causes significant impairment to daily life.

25.    Post-Traumatic Stress Disorder is a psychiatric disorder that may occur in people who have experienced or witnesses a traumatic event. When "triggered," symptoms may include, but are not limited to vivid flashbacks, shortness of breath, intrusive thoughts or images, nightmares, extreme alertness, and/or severe anxiety.

26.    On or about August 16, 2015, Defendant hired Plaintiff as a "Associate Recruiter."

27.    In or around April 2016, Plaintiff was diagnosed with cancer of the thyroid. Plaintiff immediately informed CROCKETT and Defendant of her diagnosis and need for medical leave.

28.    On or about May 10, 2016, Plaintiff underwent surgery to remove her thyroid in order to remove the cancer plaguing the tissue. As a result of this surgery, Plaintiff was placed on paid leave until on or about May 21, 2016.

29.     On or about May 21, 2016, Plaintiff returned to work from leave.

30.     On or about June 30, 2016, Plaintiff received paid time off in order to attend a follow-up doctor's appointment.

31.     On or about July 19, 2016, Plaintiff was again granted the day off to attend a follow-up consultation.

32.     On or about August 26, 2016, Plaintiff received paid leave to attend a consultation with her psychiatrist, as she was experiencing depressive symptoms and Post-Traumatic Stress Disorder. Plaintiff specifically informed CROCKETT and Defendant of her medical condition and was permitted to miss work to consult with her psychiatrist.

33.     On or about September 19, 2016, Plaintiff received the day off to have a biopsy performed by her doctor to test the levels of cancerous cells in her body after her first operation. At this appointment, Plaintiff was informed that her cancer had spread to the lymph nodes in the surrounding tissue and that further treatment was required.

34.     On or about each of the following dates, Plaintiff attended follow-up appointments and/or received further scanning and testing to identify further treatment options, and accordingly was placed on medical leave:

        (1)  October 4, 2016,

        (2)  October 6, 2016,

        (3)  October 10, 2016,

        (4)  November 1, 2016,

        (5)  November 15, 2016,

    (6)   November 21, 2016,

    (7)   December 13, 2016,

    (8)   December 14, 2016, and

    (9)   January 4, 2017.

35.    Despite these medically necessary and approved absences, Plaintiff maintained a strong performance. In fact, on or about October 21, 2016, Defendant promoted Plaintiff to "Travel Recruiter."

36.    As a Travel Recruiter, Plaintiff placed traveling nurses with various placements at medical sites throughout the United States. In this role, Plaintiff and other Travel Recruiters were expected to meet quotas and various productivity goals. However, it is unknown if each Travel Recruiter was subject to the same quantitative quotas and goals.

37.    On or about February 6, 2017, Plaintiff underwent her second surgical operation to remove the cancer that had spread throughout her upper neck.

38.    As a result of the surgery on February 6, 2017, Plaintiff was placed on medical leave through on or about February 20, 2017.

39.    On or about February 20, 2017, Plaintiff returned to work.

40.    On or about March 14, 2017, Plaintiff attended a post-operation follow up appointment after receiving approval to take the day off work. Plaintiff learned she would require a radioactive iodine treatment in the coming weeks.

41.    On or about April 3, 2017, Plaintiff underwent a radioactive iodine treatment to further neutralize the cancer's growth in a treatment that again required her to miss work.

42.   On or about April 17, 2017, and April 26, 2017, Plaintiff received medical leave to attend follow-up appointments regarding the radioactive iodine treatment.

43.   On or about April 28, 2017, Plaintiff received approved leave in order to consult with her psychiatrist about her worsening mental health condition.

44.   Despite the health challenges, Plaintiff's performance remained proficient. In fact, in or around May 2017, CROCKETT, Plaintiff's immediate supervisor, issued Plaintiff a positive performance review wherein CROCKETT evaluated Plaintiff's performance as meeting "most/all expectations."

45.   On or about May 2, 2017, Plaintiff attended an appointment with her doctor where she learned she would require a radiation treatment to prevent the cancer from spreading further.

46.   As part of the radiation treatment, on or about May 16, 2017, and May 17, 2017, Plaintiff was approved for and took medical leave to receive pre-radiation injections in order to prepare for the radiation treatment.

47.   From May 17, 2017, until May 20, 2017, Plaintiff underwent radiation treatment. On each of these dates, Plaintiff was required to take leave from work.

48.   Due to the danger that high levels of radiation in the body post-radiation treatment poses to bystanders, Plaintiff was placed on leave through May 29, 2017 and instructed to avoid physical contact with anyone.

49.   On or about May 29, 2017, Plaintiff returned to work.

50.     On or about July 7, 2017, just six weeks after Plaintiff's return from medical leave and two months after issuing Plaintiff a positive performance evaluation, CROCKETT issued Plaintiff a verbal warning, citing Plaintiff's failure to meet her required productivity goals.

51.     In response, Plaintiff complained to CROCKETT that the verbal warning failed to consider Plaintiff's extensive medical absences and specifically stated that she felt receiving disciplinary action based on her medical needs amounted to disability discrimination. Plaintiff also pointed out that CROCKETT herself had issued her a positive performance evaluation just two months earlier.

52.     In turn, CROCKETT ignored Plaintiff's complaints and formally issued the verbal warning.

53.     Upon information and belief, Plaintiff's non-disabled colleagues of the same title did not receive disciplinary action, verbal or written, informal or formal, regarding productivity goals and quotas despite failing to meet same.

54.     Around this time, CROCKETT began making repeated offensive and derogatory references to Plaintiff's age and disability.

55.     For example, and not meant to be an exhaustive list, CROCKETT openly commented to Plaintiff's colleagues that Plaintiff was "**too old to do this job**," "**too slow**," and stated that "**[Plaintiff] is never here.**"

56.     By further means of example, and not meant to be an exhaustive list, CROCKETT commented to Plaintiff's colleagues that Plaintiff is "**sick all of a sudden**" and referenced Plaintiff's need to maintain her health because of her age.

57.    On at least one occasion, CROCKETT referred to Plaintiff in front of her colleagues as "**stupid**" and "**hopefully not returning [from medical leave].**" Such comments occurred in the context of CROCKETT's repeated and open declarations of needing to hire "**new, brighter**" employees within her department.

58.    Consequently, Plaintiff complained to ALBERT, Director of Human Resources, regarding the verbal warning, complaining of disability and age discrimination stemming from CROCKETT's decision to issue Plaintiff a verbal warning. ALBERT assured Plaintiff that she would investigate and take corrective action. Nevertheless, upon information and belief, no action was taken by the Human Resources Department to investigate Plaintiff's complaints of discrimination.

59.    In the interim, CROCKETT continued to make routine and repeated offensive comments to Plaintiff's coworkers based on Plaintiff's age and disability.

60.    On or about November 7, 2017, CROCKETT issued Plaintiff a final written warning citing her continued failure to meet productivity goals and quotas.

61.    In response, Plaintiff renewed her complaints of discrimination to CROCKETT and Human Resources to no avail.

62.    On or about November 15, 2017, Plaintiff's father required sudden and unexpected medical care that required Plaintiff to supervise his condition all day and night. Accordingly, on this date, Plaintiff requested to be placed on family medical leave from CROCKETT. CROCKETT instructed Plaintiff to acquire medical documentation to substantiate her need for family medical leave.

63.   On or about November 20, 2017, Plaintiff submitted her formal request for family medical leave with the accompanying medical documentation as requested by CROCKETT.

64.   On or about December 6, 2017, Defendant contacted Plaintiff to request further documentation to process Plaintiff's request for family medical leave. Plaintiff immediately completed and provided Defendant with the required paperwork, and Defendant informed Plaintiff that a decision regarding her request would be reached by December 12, 2017.

65.   On or about December 11, 2017, CROCKETT and ALBERT summoned Plaintiff to the Human Resources conference room wherein Plaintiff was notified of her termination.

66.   Defendant HealthTrust wrongfully and unlawfully terminated Ms. FIORE because of her disability, her age, and her request for family medical leave, and in retaliation for her complaints of discrimination and requests for family medical leave.

67.   The aforementioned facts are just some of the examples of the discrimination Ms. FIORE suffered.

68.   Additionally, Ms. FIORE claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine.

69.   Defendant has established a pattern and practice of not only discrimination but also retaliation.

70.   As a result of the acts and conduct complained of, Ms. FIORE has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails.   Ms. FIORE also suffered future pecuniary losses,

emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

71.    As a result of the events described herein, Ms. FIORE suffers from increased depression, stress, and anxiety.  Similarly, Ms. FIORE has trouble sleeping as a result of Defendant's conduct.

72.    Further, as a result of Defendant's unlawful employment practices, Ms. FIORE felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

73.    As Defendant's conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Plaintiff respectfully seeks all available damages including but not limited to emotional distress, loss wages, back pay, front pay, statutory damages, attorney's fees, costs, interest and punitive damages from all Defendants jointly and severally.

74.    Defendant's actions and conduct were intentional and intended to harm Ms. FIORE.

75.    Ms. FIORE has presented factual allegations that would permit any reasonable jury to award damages.

76.    At bottom, Defendant is liable for their reckless disregard for Ms. FIORE's personal dignity and her civil right to pursue equal employment opportunity.

77.    Ms. FIORE has suffered damages as a result of Defendant's unlawful employment practices.

## COUNT ONE-
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

78.    Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

79.    The ADA makes it unlawful for an employer to discriminate against an employee based on that person's disability. 42 U.S.C. §12112.

80.     42 U.S.C. §12112(a) provides that "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

81.     Further, 42 U.S.C. §12112(b)(4) provides that "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association" is a prohibited form of discrimination.

82.     Defendant is prohibited under the ADA from discriminating against Plaintiff because of her disabilities with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

83.     Plaintiff is a person with qualifying disabilities under the ADA.

84.     Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her termination of employment, was because of Plaintiff's disabilities (cancer, depression).

85.     In subjecting Plaintiff to adverse employment action on the basis of her disabilities, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

86.     At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Plaintiff FIORE in the terms and conditions of her employment because of her disabilities, and Defendant did unlawfully discriminate against Plaintiff in the terms and privileges of her employment because of her disabilities in violation of the ADA.

87. Defendant violated the ADA by unlawfully discharging and discriminating against Plaintiff based her disabilities, of which the Defendant was fully aware of.

88. As a result of Defendant's intentional discriminatory conduct and termination of Plaintiff's employment in violation of the ADA, Plaintiff FIORE has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

89. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA.  Accordingly, Plaintiff also requests punitive damages as authorized by the ADA.

90. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

91. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

92. Plaintiff FIORE has been damaged by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated the ADA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT TWO-
## RETALIATION IN VIOLATION OF THE ADA

93. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

94. Defendant HealthTrust discriminated against Plaintiff FIORE due to her disability in making multiple employment related decisions.

95. The ADA (29 U.S.C. §12203(a)) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

96.  At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of the ADA by Defendant HealthTrust's employees had occurred.

97. At all times relevant, the unlawful discrimination by Defendant's employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by the ADA.

98.   At all material times, the employer exhibiting discriminatory conduct against Plaintiff FIORE possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

99.   Defendant intentionally retaliated against Plaintiff by discharging her for complaining of actions by Defendant made unlawful under the ADA.

100.  Plaintiff's termination constitutes a materially adverse employment action under the ADA.

101.  There is a causal connection between Plaintiff's complaints of discrimination and her termination.

102.  Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

103.  Plaintiff FIORE has been damaged by the illegal conduct of Defendants.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.   Adjudge and decree that Defendant has violated the ADA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.   Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.   Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT THREE-
## AGE DISCRIMINATION IN VIOLATION OF THE ADEA

104.   Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

105.   This is an action to recover all damages, interest, equitable relief and attorney's fees and costs on behalf of Plaintiff for violations of her federal rights under the ADEA, to include the remedies in 29 U.S.C. §621 et seq.

106.   The ADEA (29 U.S.C. 626) provides that it shall be unlawful for an employer-

"(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify their employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."

107.   Defendant HealthTrust is prohibited under the ADEA from discriminating against Plaintiff FIORE because of her age with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

108.   Plaintiff FIORE is a sixty-one (61) year-old individual female and is protected against discrimination under the ADEA.

109.   Defendant HealthTrust's employees targeted Plaintiff with discriminatory conduct based on Plaintiff's age, asserting that Plaintiff was unable to do her work due to her age and favoring younger employees in the terms and conditions of their employment.

110.    Defendant treated Plaintiff FIORE less favorably than similarly situated employees outside the protected class.

111.    Defendant engaged in adverse employment actions against Plaintiff, including but not limited to, issuing her disciplinary action for failing to meet her productivity goals despite failing to discipline her younger counterparts for their failures to meet productivity goals, and wrongfully terminating Plaintiff.

112.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

113.    Plaintiff FIORE has been damaged by the illegal conduct of Defendants.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.    Adjudge and decree that Defendant has violated the ADEA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.    Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.    Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.    Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT FOUR-
## RETALIATION IN VIOLATION OF THE ADEA

114. Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

115. Defendant HealthTrust discriminated against Plaintiff FIORE due to her age in making multiple employment related decisions.

116. The ADEA (29 U.S.C. 623(d)) provides that "it shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

117. At all times relevant, Plaintiff FIORE acted in good faith and with the objective and subjective belief that violations of the ADEA by Defendant HealthTrust's employees had occurred.

118. At all times relevant, the unlawful discrimination by Defendant's employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by the ADEA which would not have occurred but for that opposition.

119. At all material times, the employer exhibiting discriminatory conduct against Plaintiff FIORE possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

120.    Defendant intentionally retaliated against Plaintiff by discharging her for complaining of actions by Defendant made unlawful under the ADEA.

121.    Plaintiff's termination constitutes a materially adverse employment action under the ADEA.

122.    There is a causal connection between Plaintiff's complaints of discrimination and her termination.

123.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

124.    Plaintiff FIORE has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.    Adjudge and decree that Defendant has violated the ADEA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.    Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.    Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.    Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT FIVE-
## UNLAWFUL INTERFERENCE IN VIOLATION OF FMLA

125.   Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

126.   Defendant HealthTrust unlawfully interfered with Plaintiff FIORE's right to family medical leave under the FMLA.

127.   By nature of Plaintiff's employment with Defendant, Plaintiff was an employee covered by the FMLA and Defendant HealthTrust was subject to the FMLA's regulations.

128.   The FMLA (29 C.F.R. § 825.220(a)) provides: "The FMLA prohibits interference with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights. More specifically, the law contains the following employee protections:

   (1) An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act.

   (2) An employer is prohibited from discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the Act…"

129.   Defendant HealthTrust is prohibited under the FMLA from unlawfully interfering with Plaintiff's exercise of her rights to family medical leave to serve as a caregiver to her qualifying relative, namely her father.

130.   Defendant HealthTrust violated the FMLA and failed to provide Plaintiff the benefits to which she was entitled under the FMLA when it unlawfully interfered with Plaintiff's right to family medical leave by failing to provide Plaintiff with her requested family medical leave despite receiving all required paperwork from Plaintiff.

131.   Plaintiff FIORE qualified for family medical leave by nature of her three-year long employment with Defendant and her father's qualifying medical condition that required her caregiving services.

132.   By nature of Plaintiff's requests and exchange of FMLA forms and paperwork on November 14, 2017, November 15, 2017, November 20, 2017, and December 6, 2017, Plaintiff FIORE provided Defendant with adequate notice of her intention to take leave pursuant to the FMLA.

133.   Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

134.   Plaintiff FIORE has been damaged by the illegal conduct of Defendants.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.   Adjudge and decree that Defendant has violated the FMLA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.   Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.   Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**COUNT SIX-**
**RETALIATION IN VIOLATION OF THE FMLA**

135.  Plaintiff realleges and incorporates by reference each allegation contained in the previous paragraphs, and further alleges as follows.

136.  Defendant HealthTrust unlawfully interfered with Plaintiff FIORE's rights under the FMLA.

137.  The FMLA (29 C.F.R. § 825.220(3)) provides that "All persons (whether or not employers) are prohibited from discharging or in any other way discriminating against any person (whether or not an employee) because that person has—

> (i) Filed any charge, or has instituted (or caused to be instituted) any proceeding under or related to this Act;
>
> (ii) Given, or is about to give, any information in connection with an inquiry or proceeding relating to a right under this Act;
>
> (iii) Testified, or is about to testify, in any inquiry or proceeding relating to a right under this Act…"

138.  At all times relevant, Plaintiff FIORE acted in good faith and with the objective and subjective belief that violations of the FMLA by Defendant HealthTrust's employees had occurred.

139.  At all times relevant, the unlawful interference by Defendant's employees with Plaintiff's rights and benefits under the FMLA occurred because she opposed a practice made unlawful by the FMLA which would not have occurred but for that opposition.

140.  Defendant intentionally retaliated against Plaintiff by discharging her for requesting family medical leave pursuant to the FMLA.

141. Plaintiff's termination constitutes a materially adverse employment action under the FMLA.

142. There is a causal connection between Plaintiff's request for family medical leave and her termination.

143. Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

144. Plaintiff FIORE has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a. Adjudge and decree that Defendant has violated the FMLA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d. Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress and economic damages, punitive damages, liquidated damages, attorney's fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## **DEMAND FOR JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

Dated: Miami, Florida
       August 5, 2021

                              Respectfully submitted,

                              DEREK SMITH LAW GROUP, PLLC
                              *Attorneys for Plaintiff*

                              /s/_____
                              Lauren Tobin, Esq.
                              Florida Bar Number 1024850
                              Lauren@dereksmithlaw.com
                              701 Brickell Avenue, Suite 1310
                              Miami, FL 33131
                              Tel: (305) 946-1884